838 F.2d 1210
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Ralph Neal COLVARD, Defendant-Appellant,
 No. 87-5028.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 6, 1987.
Decided: Feb. 2, 1988.
 
 James Arnold Everett (Everett & Everett on brief) for appellant.
 Kenneth D. Bell, Assistant United States Attorney (Charles R. Brewer, United States Attorney, Max O. Cogburn, Jr., Chief Assistant United States Attorney on brief) for Appellee.
 Before DONALD RUSSELL, JAMES DICKSON PHILLIPS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 The defendant, Ralph Neal Colvard, was convicted in the district court of unlawfully and willfully attempting to possess with intent to distribute cocaine in violation of 21 U.S.C. Secs. 841(a)(1) and 846. We affirm.
 
 
 2
 On August 19, 1985, thirty-eight kilograms of cocaine were seized at the Ashe County, North Carolina airport. Defendant was not alleged to have been involved in this seizure but was observed to be in attendance at the trial.
 
 
 3
 Deputy Sheriff, Gary Baker met defendant in 1984, and the two had a casual relationship until 1986. In August of 1986, defendant agreed to let Deputy Baker use a rental property in exchange for Baker's making repairs on the property. On August 25, 1986, Baker and defendant went to the house so that defendant could see the repairs Baker had made. While there, defendant informed Baker that cocaine helped him to think clearer and also asked Baker how much he was paid as a police officer. Defendant then asked Baker what had happened to the seized 38 kilograms of cocaine and if Baker had access to it. Baker told defendant that he did have access to the cocaine and they agreed upon a price of $25,000 a kilogram at which Baker would sell the cocaine to defendant. Baker then left the house and contacted Federal Drug Enforcement Administration Agent, Bob Ridler. Baker and Ridler met with defendant on numerous occasions to set up this "deal."
 
 
 4
 At a meeting on October 9, 1986, defendant brought along a check for $160,000 which Baker and Ridler refused to accept. On October 16, 1986, defendant brought $20,000 cash and explained that he was having difficulty raising all of the money. The agents kept the $20,000 as "good faith money" that defendant was seriously interested in buying the cocaine and that they would not destroy the cocaine before defendant could come up with the rest of the money. Defendant was arrested on October 22, 1986.
 
 
 5
 Defendant contends that the district court erred in two respects. First, defendant argues that he had no predisposition to commit the crime and the district court erred in not finding entrapment. Second, defendant asserts that there is insufficient evidence to support his conviction of attempting to purchase cocaine.
 
 
 6
 As to defendant's first claim, this court has held that "the essential element of the entrapment defense is the defendant's lack of predisposition to commit the crime charged." United States v. Hunt, 749 F.2d 1078, 1085 (4th Cir.1984). There seems little doubt in this case but that the defendant was predisposed to commit the crime of attempting to purchase cocaine. Defendant was seen at the original trial involving the 38 kilograms of cocaine. Defendant initiated the conversation with Baker asking where the cocaine was and if Baker could get it. Defendant told Baker cocaine helped him think clearer and asked Baker how much he was paid as an officer. The evidence clearly supports the judgment of the district court that defendant was predisposed to commit the crime charged and was not entrapped.
 
 
 7
 Defendant next argues that there was insufficient evidence to convict him of attempting to purchase cocaine. This argument is without merit. The evidence shows that defendant met frequently with the law enforcement officials to discuss the purchase of a substantial amount of cocaine. Further, defendant produced a check to pay for the cocaine. Finally, defendant gave the officers part of the purchase price in cash to hold as "good faith money" that he would go through with the deal when he raised sufficient capital. These facts support the judgment of the district court that defendant attempted to purchase cocaine.
 
 
 8
 Accordingly, the judgment of conviction of the defendant is
 
 
 9
 AFFIRMED.